WAGENER & CO. v. KIRVEN.

1. THE FINDINGS OF FACT by the Circuit Judge, that the defendant did not execute the mortgage sued on, sustained.
2. EQUITY—CONSTITUTION OF 1895—QUERY.—Does the Constitution of 1895 require the Supreme Court to *try* equity cases *de novo*, or to simply *review* the findings of fact by the Circuit Judge under the old rules.

Before GARY, J., Darlington, November, 1895. Affirmed.

Action in foreclosure by F. W. Wagener & Co. against M. C. Kirven. The following is the decree of Judge Gary:

This is a suit to foreclose a mortgage of certain real estate in the county of Darlington, alleged to have been executed by the defendant, M. C. Kirven, on the 5th day of February, 1892. The answer of the defendant denies the execution of said mortgage. The case was heard by me upon the pleadings, and the evidence in the cause taken by R. K. Charles, master for Darlington County. It will be observed that the only issue in the cause is one of fact (the execution of the

mortgage sought to be foreclosed). The case was fully argued on the circuit, and since the argument I have carefully considered the evidence, and have observed the signature to the bond, as well as that to the mortgage, under a powerful glass, and have compared the same with other signatures of the defendant, which were admitted to be genuine. The answer having put in issue the execution of the mortgage, the burden of proving its execution rest upon the plaintiffs. The mortgage was offered in evidence, and is regular in form and purports on its face to have been executed by M. C. Kirven, in the presence of R. E. L. Kirven, a son of the defendant, and T. E. Kirven, a colored man who lived at the time on Mrs. Kirven's farm. The first witness, R. E. L. Kirven, the son, testifies positively to the fact that he witnessed the execution of the paper, and that he saw his mother sign the mortgage, and that T. E. Kirven was present at the time and also saw her sign it. T. E. Kirven, or Tom Kervin, the other witness, testifies equally as emphatic, "that he did not witness the execution of the mortgage in question, and that the only mortgage he ever witnessed for Mrs. Kirven was to the People's Bank; that he did not witness mortgage to Wagener & Co." As between these two alleged witnesses to the execution of the mortgage there may be said to be a stand-off.

Now let us consider the testimony of the defendant. She is emphatic that she "did not sign the bond and mortgage to Wagener & Co. That she never signed the mortgage— never signed anything of the kind." This is a brief statement of the testimony of the actual parties to this transaction, and I may add, it is an unusual and unpleasant spectacle. The son swearing to one state of facts, and the mother and a disinterested witness swearing to an entirely different statement. It will be seen that it is with some difficulty that a conclusion can be satisfactorily reached from these pointed and plain contradictions. Considering, however, that it is the mother, in the great majority of cases, who makes the sacrifices for the son, and considering

how reluctant a mother is to destroy the reputation of a son, I am of the opinion in this case, that the evidence of the defendant should outweigh that of her son, R. E. L. Kirven, and especially so when she is corroborated by Tom Kirven. I am strengthened in this view in the fact, that when the signature to the mortgage is compared with other signatures, which are admitted to be those of the defendant, the signature to the mortgage does not appear to me to be genuine. In other words, viewing it under the glass, I am of the opinion that the signature to the mortgage is a forgery. This view is also strengthened by the fact that on numerous occasions the said R. E. L. Kirven had imitated his mother's signature and passed it as genuine. In conclusion, however, I must say, in justice to the plaintiffs, F. W. Wagener & Co., that they were not aware at the time they furnished the money and supplies to R. E. L. Kirven that there was any suspicion about the genuineness of the signature, they acted throughout the whole transaction in good faith, and were simply the dupes and innocent victims of R. E. L. Kirven.

For the reasons above stated, I conclude that the defendant, M. C. Kirven, did not execute the mortgage, herein sought to be foreclosed. It is, therefore, ordered, that the complaint of the plaintiffs be dismissed.

From this decree the plaintiffs appeal on the following exceptions:

1. Because it is respectfully submitted that his Honor erred in finding, "that as between the two alleged witnesses to the mortgage, R. E. L. Kirven and T. E. Kirven, there may be said to be a stand-off," it appearing from the testimony in the cause, that T. E. Kirven's signature as a witness to the execution of the mortgage was declared by two highly intelligent experts to have been genuine; and further, because T. E. Kirven's testimony to the effect that he had not witnessed the execution of the mortgage was contradicted by an unimpeached and disinterested witness,

who testifies, that immediately after the execution of the mortgage, T. E. Kirven told said witness that he, Kirven, had witnessed the same; and further, because the testimony shows that T. E. Kirven is a colored man, who, at the time he gave his testimony, was living upon the plantation of M. C. Kirven, and had been living there all of his life, and it is respectfully submitted that it is error to conclude, under these circumstances, that he was a disinterested witness.

2. Because his Honor erred in finding, by implication, "that the reluctance of the mother to destroy the reputation of her son," was a consideration of such force, in this particular instance, as to more than counterbalance her pecuniary interest in the result of this suit.

3. Because his Honor erred in concluding that R. E. L. Kirven was capable of forging his mother's name to this mortgage, "because on numerous occasions he had imitated his mother's signature and passed it as genuine," it not appearing from the testimony that R. E. L. Kirven had anything to gain by signing his mother's name to this mortgage, or that he had ever signed her name on any occasion, from a corrupt motive or a selfish end; and because it further appears that none of the signatures of his mother, which were confessedly made by R. E. L. Kirven, and introduced in evidence, were recognized by the experts on handwriting as having any resemblance to the signatures to the bond and mortgage in suit, and other confessedly genuine signatures.

4. Because his Honor erred in reaching his conclusion that the defendant's alleged signature to the mortgage was a forgery, without considering any of the testimony in the case except that given by the defendant herself, and by the two alleged subscribing witnesses, as to the mere signing of the bond and mortgage.

5. Because his Honor erred in concluding that the signature of the defendant to the mortgage was a forgery, notwithstanding the testimony of two expert witnesses on handwriting to its genuineness, and notwithstanding the admitted fact that the defendant had received the goods to

secure the payment of which the mortgage was given, marked in her name, and used the same for her benefit, and notwithstanding the further fact, that a short time after the mortgage became due and payment of the same was demanded by the plaintiffs, she authorized her son, J. P. Kirven, to negotiate with the plaintiffs for the payment or arrangement of the mortgage debt, which he, the said J. P. Kirven, undertook to do, without complaining, or even hinting, that the defendant had never executed the mortgage.

6. Because it is respectfully submitted that the overwhelming weight of the testimony is contrary to the conclusion reached by his Honor, that the signatures to the bond and mortgages are forgeries.

*Messrs. W. F. & G. W. Dargan*, for appellant, cite no authorities.

*Messrs. Boyd & Brown*, contra, cite: 18 S. C., 508.

July 27, 1896. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The plaintiffs brought this action for the foreclosure of a mortgage on real estate, which they alleged had been executed by the defendant. This allegation was distinctly denied in the answer, and the sole question made before the Circuit Court was whether the plaintiff had established, by the preponderance of the evidence, the execution of the mortgage. The case was heard below by his Honor, Judge Ernest Gary, upon testimony taken and reported by the master, all of which is incorporated in the "Case" as prepared for argument here. The Circuit Judge rendered his decree, in which he found as a fact that the defendant did not execute the mortgage sought to be foreclosed, and rendered judgment that the complaint be dismissed. From this judgment the plaintiffs have appealed upon the several grounds set out in the record; and we think it due to all the parties concerned that the decree of the Circuit Court, together with the grounds of appeal, should be incorporated in the report of the case.

The appeal raises a question of fact pure and simple, and hence, under the long established and well settled rule of this Court, which, in the case of *Land Mortgage, Investment and Agency Co. of America, Limited,* v. *Faulkner,* 45 S. C., a majority of this Court has held was not changed by the provisions of the present Constitution, except in one particular, which has no application here, the only inquiry for this Court is whether the conclusion reached by the Circuit Judge is without any testimony to sustain it, or is manifestly opposed to the overwhelming weight of the evidence. But as some difference of opinion has been expressed as to the effect of the provisions of the present Constitution in this respect, we avail ourselves of the present occasion to add, in further vindication of the conclusion reached by the majority of the Court in the case above referred to, the following views: As was there said, the term "appeal" necessarily involved the idea of a review of the facts as well as the law, and as it would be absolutely necessary for this Court to review the facts before it could determine whether the well settled rule, above referred to, was applicable in a given case, it seems to us that when the present Constitution required the Supreme Court, on appeals in cases of chancery, to "review the findings of fact," it only required, in specific terms, what was necessarily implied by the general terms, "appellate jurisdiction," used in the former Constitution; and that the only real change effected by the present Constitution was to forbid the Supreme Court from reviewing facts found by a jury in a chancery case, unless the verdict had been set aside. The present Constitution does not require this Court to try questions of fact, presented in an appeal case of chancery *de novo*, without regard to the findings of fact in the Court below, but the requirement is simply to *review* the findings of fact, for the purpose of ascertaining whether there was error; and surely when a question of fact has been determined by an intelligent, disinterested, and experienced Circuit Judge, that affords a very good reason for presuming that his conclusion is correct, and it is in-

cumbent upon one assailing its correctness to show clear error therein.

If, therefore, the long established and well settled rule is to be applied to this case, it is quite clear that the judgment below must be affirmed, for there certainly was some (and, as we think, a good deal) testimony to sustain the conclusion reached by the Circuit Judge; and we are far from satisfied that his conclusion is manifestly against the overwhelming weight of the testimony. It must be remembered that the burden of proof was upon the plaintiffs to establish, by the preponderance of the evidence, the fact that the defendant did execute the mortgage in question—*not* upon the defendant to show that her name as signed to the mortgage was a forgery. The mortgage, on its face, purports to have been executed in the presence of two witnesses—R. E. L. Kirven and T. E. Kirven—whose names appear thereon as subscribing witnesses; but while one of these persons—R. E. L. Kirven—does testify that the mortgage was executed by the defendant in his presence and in the presence of T. E. Kirven, whose name appears as the other subscribing witness, yet the said T. E. Kirven denies, in his testimony, that he ever witnessed the execution of the mortgage, and that his name, appearing thereon as a subscribing witness, was written by him; and his testimony is fully corroborated by the testimony of the defendant, who denies that she ever executed the mortgage, and that her name signed thereto was written by her, or by any one by her directions or by her authority. It is true that there was testimony on the part of the plaintiffs that the said T. E. Kirven had admitted that he had witnessed the execution of the mortgage in question, but that witness, when subsequently put upon the stand, explained this by saying that when asked if he had witnessed the execution of the mortgage, he understood the inquiry to refer to a mortgage given to the People's Bank of Darlington by the defendant, which he had, in fact, witnessed; and, therefore, he admitted that he had witnessed the execution of the mortgage—meaning

the mortgage to the bank and not the mortgage to the plaintiffs, which he persistently denied he had ever witnessed. On the other hand, there was testimony on the part of the defendant that R. E. L. Kirven, when asked by one of his brothers about the mortgage which plaintiffs claim to hold, denied that Wagener had any mortgage; and when told that Josh (another brother) said the Wagener mortgage was on record, replied: "O, Josh lied." * * * "Wagener aint got no mortgage, Josh lied." The plaintiffs, amongst other things, seem to have relied largely upon the testimony of two experts in handwriting, neither of whom, however, seem to have been acquainted with the handwriting of the defendant, derived from having seen her write, but based their opinions upon a comparison of handwriting, that the signature of the defendant to the mortgage was genuine, after an examination of signatures of the defendant to other papers admitted to be genuine, and comparing them with other specimens admitted to be imitations of her signature. On the other hand, defendant relied upon many circumstances for the purpose of corroborating the theory of the defense, to some of which we will briefly refer, to wit: That the condition of the alleged bond which the mortgage purported to secure was the advance by the plaintiffs to the defendant, during the year 1892, of "$500 in cash, $1,000 in plantation supplies, and $1,000 in guano, to enable her to carry on her farming operations during the present year," making in all advances to the amount of $2,500 during the year in which the said R. E. L. Kirven was conducting the farming operations of defendant's plantation; and as it was shown that defendant had already made arrangements with the People's Bank of Darlington for advances to the amount of $2,000 for the same purposes for that year, and as experience, both before and after that year, when the farming operations of defendant were conducted by others of defendant's sons, showed that an advance of $1,000 was ordinarily sufficient, it was contended that there was no occasion for any such advances as the bond

and mortgage purported to secure.  Another very significant circumstance was that when R. E. L. Kirven made arrangements with plaintiffs, he attempted to secure them by a bond and mortgage purporting to have been executed by defendant to her son, T. J. Kirven, a brother of R. E. L. Kirven, and by him assigned to plaintiffs; and both defendant and T. J. Kirven testify that they knew nothing whatever of such papers, and T. J. Kirven testifies positively that he never assigned any such papers to plaintiffs.  After plaintiffs had refused to accept these papers, saying that they wanted a mortgage direct from defendant, then it was that the papers upon which the present action was based were prepared and sent down to plaintiffs.  When this arrangement was effected, R. E. L. Kirven drew a draft upon plaintiffs, signing the same "M. C. Kirven, per R. E. L. Kirven."  This draft was returned with directions that all drafts and orders for advances must be signed by the defendant herself.  After these instructions, R. E. L. Kirven signed drafts and orders "M. C. Kirven," imitating the handwriting of his mother, thus deceiving the plaintiffs, which he says he did by the directions of his mother, though she denied that she had ever given him any such directions, and knew nothing of any drafts or orders on the plaintiffs signed in her name.  Another circumstance relied on by defendant was that the testimony showed that R. E. L. Kirven, besides signing the name of his mother to sundry papers, imitating her signature, had also signed the name of his brother, T. J. Kirven, imitating his handwriting, though R. E. L. Kirven testified that in every instance in which he did this, he had, or thought he had, authority so to do from the person whose handwriting he imitated.  Another very suspicious circumstance relied on by defendant was that when plaintiff began to demand a settlement of advances made by them, R. E. L. Kirven directed Tom Kirven to get his mail, as well as any letter to his mother, from the post office during his absence in Sumter, where he was interested in other farming operations, and not allow any one to see his

letters, or the letters to his mother. During his absence, a letter from plaintiffs, addressed to the defendant, with whom plaintiffs very naturally supposed they were dealing, was received from the post office by Tom Kirven and delivered to Luke Kirven, another son of defendant, to be given to his mother; the witness, Tom Kirven, saying that his suspicions were aroused by these instructions, and by the fact that he had previously seen R. E. L. Kirven break open a letter addressed to his mother and read it. He, therefore, told another brother, Joshua, about this latter letter, because he thought there was something wrong. That letter does not appear to have reached defendant, for Luke Kirven testified that, after R. E. L. Kirven's return, he took up the letter from the table and started to read it, when his brother, R. E. L. Kirven, took the letter out of his hand and tore it up. The contents of that letter do not seem to have been made known to any other member of the family, until subsequently Josh. Kirven wrote to the plaintiffs for a duplicate of the letter; and the argument was, that R. E. L. Kirven desired to conceal from his mother the fact that the plaintiffs claimed to have a large debt against her, and hence his effort to prevent any letter from the plaintiffs to his mother reaching her. These and various other circumstances, to which we do not deem it necessary to specially revert, were relied on by the defendant to corroborate the positive testimony of the defendant and the witness, Tom Kirven—the one to the fact that she never executed the mortgage, and the other to the fact that he never saw defendant sign the mortgage, and never signed his name as a subscribing-witness thereto.

On the other hand, the plaintiffs, in addition to the positive testimony of R. E. L. Kirven as to the execution of the mortgage, and the testimony of the experts above referred to, relied also, amongst other circumstances, upon the efforts made to compromise after threats of suit had been made, which, it is claimed, amounted to an admission of defendant's liability. But it seems to us that, in addition

to the general rule as to the offers of compromise, these efforts to obtain a compromise may readily be accounted for, as prompted solely by a desire to prevent the disgrace of a very near relative. In deference to the zeal and ability with which this appeal has been pressed, and the manifest sincerity of counsel for plaintiffs, we have examined the testimony in this case with unusual care; but such examination, so far from satisfying us that there is any error in the conclusion reached by the Circuit Judge, rather tends to show that his conclusion is correct.

We are pleased to be able to endorse fully the very appropriate and just remarks made by the Circuit Judge, relieving the plaintiffs from any imputation whatever of any improper conduct throughout this whole transaction.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY. My reasons for concurring in the result only, are expressed by me in the case of Land Mortgage Co. *v.* Faulkner, hereinbefore mentioned.

MR. JUSTICE JONES. I concur in the result, because the preponderance of the evidence is not against the conclusions of fact by the Circuit Judge. I think that sec. 4, art. 5, of the present Constitution, was intended to sweep away the rule heretofore prevailing, and announced in the opinion of the Chief Justice, viz: that the conclusion of a Circuit Judge on a question of fact will be affirmed, unless without any testimony to sustain it, or unless it is manifestly opposed to the overwhelming weight of the evidence. This rule is inimical to the search for truth, which is, and should be, the duty of every Court. In its practical operation it makes the judgment of a Circuit Judge on a question of fact *final*, notwithstanding the jurisdiction and duty of this Court to *review* his conclusions of fact. Of course, every appellant, on an issue of fact in chancery, has the burden of showing error in the Circuit Judge in his conclusion thereon, but he discharges this burden when he

shows that the preponderance of the evidence is against the conclusions of the Circuit Judge.