0229

PARAMOUNT FUND, INC., Respondent, v. William CUSAAC, Bertie Lee Cusaac, Teresa C. Robinson, Eddie Mae Barnes, a/k/a Maxine C. Barnes, Edna James, Edward Cusaac, Roosevelt Cusaac, Henry Cusaac, Juanita Cusaac Hamlin, Leroy Cusaac, Shirley Cusaac, and Lena Mae McCants, and John Doe, a fictitious person named to represent known and unknown heirs, minors, incompetents, persons non compos mentis, and anyone operating under a disability, who might have or claim to have any right, title and interest in and to the real estate which is the subject of this action, Defendants, of whom William Cusaac, Bertie Lee Cusaac, Eddie Mae Barnes a/k/a Maxine C. Barnes, Edna Mae James, Edward Cusaac, Roosevelt Cusaac, Henry Cusaac, Juanita Cusaac Hamlin, LeRoy Cusaac, Shirley Cusaac, and Lena Mae McCants, are Appellants.

(319 S. E. (2d) 354)

Court of Appeals

*Russell W. Templeton,* Columbia, *for appellants.*

*E. Lee Morgan,* of *Hyman, Morgan, Brown, Jeffords and Rushton,* Florence, *for respondent.*

Heard Jan. 26, 1984.

Decided Aug. 13, 1984.

BELL, Judge:

Paramount Fund, Inc., brought this action to foreclose an unrecorded mortgage of real property allegedly executed by an unknown agent or child of Mattie Cusaac in August 1966. Cusaac died in September 1966. The circuit court ordered foreclosure. Because we believe Paramount failed to carry its burden of proving the existence of a valid mortgage, we reverse.

Prior to her death on September 20, 1966, Mattie Cusaac was the owner of a 13/18 undivided interest in certain property in Florence County. Her five minor children owned the other 5/18 interest. Mrs. Cusaac apparently desired to build a house for herself and her children on a portion of the property. In June 1966 she petitioned the Florence County Civil Court for permission to mortgage the children's interest in the property. The Civil Court granted the petition. Thereafter, Mrs. Cusaac obtained a $14,450.00 FHA loan through First Provident Corporation. The First Provident loan was secured by a first mortgage in the name of Mattie Cusaac individually and as natural guardian for her five minor children. Although Mattie Cusaac's name was signed to the First Provident mortgage, it appears from the testimony that the signature was not in her handwriting.

The mortgage to First Provident was duly recorded. Approximately six months after Cusaac's death, the First Provident loan went into default. First Provident foreclosed its mortgage sometime in 1967 and the property was bid in by the Secretary of Housing and Urban Development. The First Provident mortgage is not at issue in this suit.

The instrument giving rise to this action purports to be another mortgage executed on behalf of Mattie Cusaac on August 24, 1966. It covers a fifteen acre tract adjacent to the

land which secured the First Provident mortgage. Like the First Provident mortgage, the instrument is signed in Mattie Cusaac's name, but the handwriting is not hers. An expert witness testified that the same person who signed the First Provident mortgage also signed the instrument in question here.

According to Mr. Rainwater, the president and sole stockholder of Paramount Fund, Paramount loaned $1500 to Mattie Cusaac in August 1966. The purported purpose of the loan was to complete construction on the house Cusaac was building with the First Provident loan. Paramount introduced a check for $1500, payable to Mattie Cusaac, which bears the date August 24, 1966. On the reverse side of the check is a blank endorsement in the name of Mattie Cusaac. The signature is not in Mattie Cusaac's handwriting, but in the hand of the same person who signed the purported mortgage instrument. The check bears no marks indicating it was paid by the drawee bank. Paramount introduced no other evidence that the check was ever negotiated or paid.

Mr. Rainwater and Mrs. Long, an employee of Paramount, signed the purported mortgage instrument as witness. Neither was able to testify that Mattie Cusaac was present at a loan closing. Neither could state who signed Cusaac's name to the mortgage instrument or the check. Long testified that if a power of attorney had been used, it would have been so indicated on the mortgage instrument. Any power of attorney would also have been recorded to comply with FHA regulations. No recorded power of attorney was introduced into evidence. Rainwater also had no explanation why the purported mortgage was not recorded. The record fails to disclose why Paramount waited some thirteen years after the default on the alleged loan to commence foreclosure proceedings.

Paramount's complaint alleges that an unknown agent or child of Mattie Cusaac executed the $1500 note and mortgage for her. Cusaac's heirs deny this allegation. In an action to foreclose a mortgage on real property, the mortgagee has the burden of proving a disputed mortgage by the preponderance of the evidence. *Wagener v. Kirven*, 47 S. C. 347, 25 S. E. 130 (1920). Failure to prove the signature of the mortgagor is fatal to the mortgagee's claim. *Id.* Likewise, a party asserting agency as a basis of liability must prove the existence of the agency. *Raney v. Barnes Lumber Corp.*, 195

Va. 956, 81 S. E. (2d) 578 (1954). Agency may be proven by circumstantial evidence. *Drayton v. Industrial Life & Health Insurance Co.*, 205 S. C. 98, 31 S. E. (2d) 148 (1944). However, our Supreme Court has stated that agency must be "clearly established by the facts." *Pennell & Harley v. Hearon*, 169 S. C. 16, 22, 168 S. E. 188, 190 (1933).

In this case, Paramount failed to prove execution of the alleged mortgage by Mattie Cusaac herself. Therefore, it was critical for Paramount to prove an agency relationship between Cusaac and the person who signed her name to the mortgage instrument. There are simply too many gaps in the evidence for us to hold that agency was "clearly established by the facts."

Paramount conceded the mortgage instrument does not on its face establish agency. There was no proof as to the identity of the alleged agent or the scope of the alleged agency. The fact that an unknown person may have been authorized by Cusaac to execute the First Provident mortgage on her behalf does not prove an agency to execute the Paramount mortgage on different land at a later time. Moreover, since there is no evidence that the $1500 check was ever paid by the bank, it is not clear that Cusaac actually received the loan proceeds. Therefore, it cannot be said that Cusaac ratified the transaction by accepting the benefit of the loan. *Cf., Nichols v. Andrews*, 149 S. C. 1, 146 S. E. 610 (1929) (evidence of payment of loan proceeds to third parties rather than mortgagor was insufficient to establish valid mortgage).

The paucity of the evidence leaves us to speculate what actually happened. While it is possible to assume that a child or agent executed the mortgage on Cusaac's behalf and with her authority, a mortgage cannot be established by conjecture or presumption. *See Dixon v. Haslett*, 5 S.C.L. (3 Brev.) 475 (1814); *cf., Raney v. Barnes Lumber Corp., supra* (agency is not presumed). Paramount's failure to record the mortgage or to pursue its claim for almost fourteen years does not relieve it from its normal burden of proof.

In view of Paramount's failure to prove a valid execution of the mortgage, it was not entitled to a decree of foreclosure. The judgment of the circuit court is accordingly

Reversed.

SANDERS, C. J., and SHAW, J., concur.