24478

J. Mathis BROWN and Lois R. Brown, and Douglas A. Goodenough and Elizabeth B. Goodenough, Appellants v. INVESTMENT MANAGEMENT AND RESEARCH, INC., Raymond James & Associates, Inc., Cajun Minerals, Inc., William M. Kean, William Kean & Associates, Inc., R.J. Petitfils, Summit Land and Abstract, Inc. and John A. Scott, of whom Cajun Minerals, Inc., R.J. Petitfils, Summit Land and Abstract, Inc. and John A. Scott are Respondents.

(475 S.E. (2d) 754)

Supreme Court

*H. Fulton Ross, Jr.,* of *The Ross Law Firm,* Gaffney, and *John F. Beach,* of *John F. Beach, P.A.,* Columbia, *for appellants.*

*William G. Rhoden,* of *Winter & Rhoden,* Gaffney, *for respondents Summit Land and Abstract, Inc.*

*John A. Scott; Cajun Minerals, Inc. for Respondent Cajun Minerals, Inc.*

*R.J. Petitfils,* Lafayette, LA, *for Respondent R.F. Petitfils.*

Heard May 22, 1996.

Decided Aug. 12, 1996.

WALLER, Associate Justice:

Appellants filed a lawsuit against various defendants alleging multiple causes of action arising from their purchase of fractional undivided interests in oil and gas ventures for wells located in Louisiana. They are appealing the trial judge's order dismissing the action against Respondents for lack of personal jurisdiction.

## FACTS

Mathis Brown and Douglas Goodenough (who with their wives, Lois and Elizabeth, are Appellants) own Brown Amusement Company, Inc. Appellants live in Gaffney. Sometime in 1988, William Kean, an investment advisor with William Kean & Associates, contacted Mr. Brown and Mr. Goodenough regarding the investment status of Brown Amusement Company's profit-sharing plan. Kean persuaded Mr. Brown and Mr. Goodenough to invest these company funds with him[1] instead of with the bank currently handling them.

In 1989, Appellants began investing personal funds through Kean, IM & R, and James & Assocs. Among these invest-

---

[1] Kean also represented himself and his company to be agents of Investment Management and Research, Inc. ("IM &R") and Raymond James & Associates, Inc. ("James & Assocs."), two Florida corporations registered in South Carolina as securities brokers.

ments were the two oil well securities at issue in the complaints. First, in April 1991 the Browns purchased a 22% working interest in the "Mouton" oil well from Summit Land & Abstract, Inc. ("Summit") and Cajun Minerals, Inc. ("Cajun"). The Goodenoughs purchased a 12% working interest in the Mouton well. Second, in May 1991 the Browns and the Goodenoughs purchased a 1.5% royalty interest in the "Linder/Schwing" oil well from Summit.

Appellants filed suit against Kean, William Kean & Assocs., IM & R, James & Assocs., Summit, R.J. Petitfils (as Summit's agent), Cajun, and John A. Scott (as Cajun's agent). They alleged violations of the state and federal securities laws; fraud; breach of fiduciary duty; failure to supervise; and negligence. Summit, Petitfils, Cajun, and Scott ("Respondents") filed a motion pursuant to SCRCP 12(b)(2) to dismiss the actions against them for lack of personal jurisdiction. Cajun submitted Petitfils's affidavit stating neither he not Cajun owned property or had offices, employees or agents in South Carolina. It also stated no one at Cajun had any knowledge of Kean, IM & R or James & Assocs. because the sale had gone through Summit, thus denying any agency relationship with the securities brokers. Summit submitted Scott's affidavit stating similarly that neither he nor Summit had any connection to South Carolina. It argued the contracts with Appellants were executed and performed in Louisiana. Further, Scott stated they had never met Kean before he approached Summit seeking to purchase the oil well interests on Appellants' behalf.

Mr. Brown and Mr. Goodenough also submitted affidavits. In these they claimed Kean came to them in April 1991 to solicit the oil well securities, stating he was representing Respondents. Kean vouched for Respondents' reputability and dependability. He also gave them materials which he told them Respondents gave him to persuade Appellants to buy. Furthermore, Kean dictated the selling price and was paid a commission from Respondents (a copy of a commission check was provided). Finally, the affidavits stated that since the contracts were signed, Respondents had placed ongoing contractual obligations on Appellants which were to be performed in South Carolina. They flatly denied that they were interested in buying oil well interests, stating instead that Kean had ini-

tiated all discussion thereabout.[2] The trial judge found jurisdiction lacking.

## ISSUES

I. Does South Carolina's long-arm statute allow jurisdiction to be asserted against Respondents?

II. Does the South Carolina Uniform Securities Act allow jurisdiction to be asserted against Respondents?

## DISCUSSION

### I. *Long-Arm Statute*

Appellants argue South Carolina's long-arm statute authorizes the assertion of personal jurisdiction under three subsections:

(1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

(a) transacting any business in'this State;

\*   \*   \*   \*   \*

(c) commission of a tortious act in whole or in part in this State;

\*   \*   \*   \*   \*

(g) entry into a contract to be performed in whole or in part by either party in this State;

'   \*   \*   \*   \*   \*

S.C. Code Ann. § 36-2-803 (1977) (hereinafter cited as § 803(X)).

Appellants argue the majority of Respondents' contacts in South Carolina were conducted through Kean, who they allege was acting as Respondents' agent when he sold them the

---

[2] Appellants also offered the affidavit of another South Carolina resident who had purchased interests in the same oil wells from Respondents, through Kean, in April of 1990. Copies of commission checks from Respondents to Kean were included. While this could not be used as evidence of contacts with South Carolina so as to confer specific jurisdiction, it is relevant regarding the credibility of Respondent Summit's affidavit stating they did not know Kean until he approached them on Appellants' behalf in 1991. *See* S.C. Code Ann. § 36-2-803(2) (1977) (only a cause of action arising from acts enumerated in this section may be asserted against a person when jurisdiction sought under long-arm statute).

interests such that Kean's conduct was attributable to Respondents. The trial judge found Kean was not acting as Respondents' agent.

When challenged, the plaintiff has the burden of showing jurisdiction is properly asserted; however, the law is well-settled that at the pretrial stage only a prima facie showing is required. *Mid-State Distribs., Inc. v. Century Importers, Inc.*, 310 S.C. 330, 426 S.E. (2d) 777 (1993). Affidavits may be submitted to show jurisdiction; however, the allegations contained in the complaint are normally sufficient to warrant the exercise of jurisdiction. *Springmasters, Inc. v. D & M Mfg.*, 402 S.E. (2d) 192 (Ct. App. 1991). "Courts will take as true the allegations of the nonmoving party and resolve all factual disputes in its favor." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (Supp. 1995). This includes any factual disputes brought up by submitted affidavits. Taking Appellants' allegations in the complaints and affidavits as true, we find an agency relationship was sufficiently shown under the standard of proof required at this stage of litigation.

Our opinion in *Mid-State Distribs.* is particularly enlightening on the issue of proof of personal jurisdiction at the pretrial stage. There the defendant argued the trial court lacked personal jurisdiction over it because it did not conduct business in the state, owned no property in the state, had no agents in the state, and had no other contacts with the state. The trial judge denied the motion. On appeal, we found the allegations in the complaint were sufficient to make a prima facie showing that the defendant was involved in the distribution of products in South Carolina. "Looking at the evidence in a light most favorable to the nonmoving party, [plaintiff] has made a prima facie showing of personal jurisdiction over [defendant]. *(There are genuine questions of fact remaining which concern [defendant's] role in the distribution system . . . sufficient to warrant further inquiry")*. 310 S.C. at 333, 426 S.E. (2d) at 779 (emphasis added). This court went further to state, "The prima facie showing of personal jurisdiction at the pretrial stage is all that is required to continue the civil action. To do otherwise would require a much greater degree of specificity in the pleadings than is currently mandated by the South Carolina Rules of Civil Procedure." *Id.* at 335, 426 S.E.

(2d) at 780.[3] *See also Hammond v. Butler, Means, Evins & Brown*, 300 S.C. 458, 388 S.E. (2d) 796, *cert. denied*, 498 U.S. 952, 111 S.Ct. 373, 112 L.Ed. (2d) 335 (1990) (allegation of conspiracy among residents and nonresident enough for prima facie showing of jurisdiction over nonresident); *Dominick & Dominick*, No. 91 Civ. 4080, 1992 WL 88200 (S.D.N.Y. 1992); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351 (Supp. 1995) (in complex cases it may be desirable to delay a decision on personal jurisdiction so as to allow parties to conduct discovery, "which might lead to a more accurate judgment than one made solely on the basis of affidavits").

In finding Kean was not acting as Respondents' agent, the trial judge stated that the party asserting agency must prove the existence of the agency, which must be clearly established by the facts. He cited *Paramount Fund, Inc. v. Cusaac*, 282 S.C. 497, 319 S.E. (2d) 354 (Ct. App. 1984), for this proposition. *Cusaac*, however, is distinguishable in that it involved the issue of whether agency had been proved so as to render the defendant liable; it did not address the requirements for a pretrial showing. The judge also found Kean, acting on behalf of Appellants, contacted Respondents about the purchases. This conclusion could only have been based on Respondents' affidavits, which were in direct conflict with Appellants' assertions. Such a conflict should have been resolved, at least at this stage, in Appellants' favor.

Because we find that at the pretrial stage Appellants sufficiently alleged an agency relationship between Respondents and Kean, jurisdiction over Respondents would meet the contacts requirements under the long-arm statute. Kean transacted business in-state for Respondents. § 803(1)(a). Additionally, Appellants have alleged fraudulent and negligent misrepresentations were made by or through Kean, both of which would constitute a tort. § 803(1)(c).[4]

---

[3] We note that under our current pleading rules only ultimate facts are required to be stated in pleadings. Ultimate facts are those which the evidence upon trial will prove, and not the evidence which will be required to prove those facts. *Stroud v. Riddle*, 260 S.C. 99, 194 S.E. (2d) 235 (1973). *See also* 3 Am. Jur. (2d) *Agency* § 353 (1986) ("allegation of agency is a statement of ultimate fact and further allegations explaining how the fact of agency originated are unnecessary").

[4] In light of our holding, we find it unnecessary to address Appellants' arguments regarding whether Respondents' contacts alone would satisfy the long-arm statute.

## II. *Uniform Securities Act*

Appellants argue that independent of the state's long-arm statute, South Carolina's Uniform Securities Act[5] provides an independent jurisdictional basis. We agree. Section 35-1-1420 provides that any person, including a non-resident of the State, who "engages in conduct prohibited or made actionable by this chapter" is deemed to consent to the appointment of the Securities Commissioner to receive lawful process as if it were personally served upon it. Under section 35-1-1490:

> Any person who:
> (1) Offers or sells a security in violation of subsection (2) of § 35-1-170 or § 35-1-410 or § 35-1-810, or of any rule or order under § 35-1-50 which requires the affirmative approval of sales literature before it is used or of any condition imposed under § 35-1-950 or § 35-1-990; or
> (2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, nor misleading. . . .

Appellants allege the oil well interests were securities which were unregistered and unexempt in violation of section 35-1-810. They have also alleged violations of section 35-1-1490(2) itself. *See also* 69A Am. Jur. (2d) *Securities Regulation—State* § 222 (1993) (Uniform Securities Act intends to enable courts to assert jurisdiction over all persons civilly liable under a state's blue sky laws so long as consistent with due process). It is unquestionable that Respondents were sellers of the oil well interests. *See Allen v. Columbia Financial Management Ltd.*, 297 S.C. 481, 377 S.E. (2d) 352 (Ct. App. 1988) (definition of seller includes one who passes title of or who offers security); *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed. (2d) 658 (1988). We find by their actions that Respondents have submitted to jurisdiction under section 35-1-1420. *See also Ross v. American Income Life Ins. Co.*, 232 S.C. 433, 102 S.E. (2d) 743 (1958) (finding similar statute regarding selling insurance in-state comports with due process

---

[5] S.C. Code Ann. §§ 35-1-10 to -1590 (1987 and Supp. 1995).

even though only contact was in selling insurance contract thorough mail).

## CONCLUSION

We hold Appellants made a prima facie showing of personal jurisdiction sufficient to satisfy our long-arm statute requirements. Furthermore, we hold as a matter of law that in selling securities in this state, Respondents submitted to personal jurisdiction in South Carolina.[6] We thus remand this case back to the trial court for further proceedings.

Reversed and remanded.

FINNEY, C.J., TOAL and MOORE, JJ., and GEORGE T. GREGORY, JR., Acting Associate Justice, concur.

---

[6] Respondents Summit and Scott (the other respondents did not submit a brief not appear at oral argument) also argue that the assertion of personal jurisdiction over them would violate federal standards of due process. The trial judge specifically declined to address this issue in his order. Therefore, any due process objections are more properly addressed by the trial court on remand. *See McElveen v. Stokes,* 240 S.C. 1, 12, 124 S.E. (2d) 592, 597 (1962) ("[T]his court should not consider issues not passed upon by the circuit judge"). Additionally, Respondent Scott argues jurisdiction cannot properly be asserted over him individually. This argument was neither addressed to nor ruled on by the trial judge. We thus similarly refuse to address it for the first time on appeal.