Carroll A. **CAMPBELL, Jr.** and William H. **Monckton, IV,**
Plaintiffs,

v.

**JOHNSON & TOWERS, INC.,** Bramble Engine Power, Inc. and Tolchester Marina, Inc. Defendants.

C.A.No. 2:99–0266–23.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 1, 1999.

Scott Bluestein, Raley & Bluestein, Columbia, SC, Elizabeth H. Campbell, Nexsen, Pruet, Jacobs & Pollard, Columbia, SC, William H. Monckton, VI, Myrtle Beach, SC, for plaintffs.

John H. Tiller, Sinkler & Boyd, Charleston, SC, for defendant Johnson & Towers, Inc.

Edward D. Buckley Jr., Young, Clement, Rivers & Tisdale, Charleston, SC, for defendants Bramble Engine Power, Inc, Tolchester Marina, Inc.

### *ORDER*

DUFFY, District Judge.

This matter is before the court upon Defendants Bramble Engine Power and

Tolchester Marina's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative to dismiss for improper venue pursuant to Rule 12(b)(3). The plaintiffs filed this lawsuit in admiralty against the defendants on January 29, 1999. Both plaintiffs are South Carolina residents. The lawsuit alleges negligence, breach of express warranty, breach of implied warranty, breach of contract, misrepresentation, breach of warranty of merchantability, breach of warranty of fitness for a particular purpose, and fraudulent misrepresentation, all arising out of a contract for the repower of the plaintiffs' vessel, the M/V SECOND LADY.

## I. FACTUAL BACKGROUND

On or about November 1996, Plaintiff Monkton received by mail, at his Myrtle Beach, South Carolina residence, a Johnson & Towers brochure promoting the sale, service, and installation of Detroit Diesel engines in his and Plaintiff Campbell's 41–foot Hatteras yacht, the M/V SECOND LADY. The brochure described the proposed engines and proclaimed that Johnson & Towers would manage a "turnkey" repower of the vessel at one of Johnson & Towers' "select locations." Upon receipt of the brochure, Monkton contacted Johnson & Towers on or about December 2, 1996 to discuss the installation of the new engines, and the terms of the repower, both described in the brochure. Again on December 27, 1996, Monkton contacted Johnson & Towers to discuss the brochure and the repower of the vessel.

During this time period, Monkton also received telephone calls from Johnson & Towers regarding the repower. During one of these telephone calls to Monkton, Paul Findeison, an agent and representative of Johnson & Towers, made an appointment to fly to Myrtle Beach to view the vessel and assess her suitability for the proposed engines. At that time, Defen-

dant Bramble was an authorized Detroit Diesel dealer and installer. Bramble operated out of Defendant Tolchester's premises.[1]

On January 8, 1997, Findcison along with an alleged representative of Bramble/Tolchester arrived in Myrtle Beach, South Carolina for the sole purpose of surveying and measuring the boat for the engines described in the brochure, and soliciting the plaintiffs to repower their vessel with the proposed engines. Monkton picked the two men up from the Myrtle Beach airport and then drove them to the vessel, which was located in Georgetown, South Carolina. According to Monkton, Findeison and the Bramble/Tolchester representative surveyed the boat, measured her engine room, and described in great detail to Monkton how the engines listed in the brochure would improve the vessel's performance. After the defendants' representatives concluded their inspection of the boat, Monkton took them to lunch to further discuss the repowering of the vessel, and then returned the two representatives to the airport for their return flight.

Shortly thereafter, Findeison mailed a repower proposal to Monkton in Myrtle Beach, South Carolina. The repower proposal included the brochure earlier sent to Monkton, which outlined the terms of the proposed repower of the boat. Shortly after receiving Johnson & Towers' proposal, Bramble/Tolchester faxed to Monkton in South Carolina a more detailed repower proposal outlining the terms of the proposed repower of the boat. In accordance with its brochure and the terms of the proposal, Johnson & Towers chose the Bramble/Tolchester site as the "select location" to perform the repower of the boat.

After receiving the seven-page repower proposal from Bramble/Tolchester in South Carolina, the plaintiffs continued contract negotiations with Johnson & Tow-

---

1. Some time after the work on the plaintiffs' vessel was complete, Bramble and Tolchester combined to form one corporation, hereinafter referred to "Bramble/Tolchester."

ers and Bramble/Tolchester. Monkton completed the negotiations started on January 8, 1999 for the contract to repower the boat from his office in Myrtle Beach, South Carolina. The negotiations consisted of Monkton making numerous telephone calls to Bramble/Tolchester and Johnson & Towers from South Carolina. Additionally, throughout the contract negotiations, Monkton received several telephone calls in South Carolina from Bramble/Tolchester and Johnson & Towers. Thereafter, the parties orally entered into the contract in question.

Johnson & Towers also recommended Debis Financial Services [2] for the financing of the repower, and Johnson & Towers made the financing arrangements for the plaintiffs as part of the "turn-key" repower offered in its proposal. Monkton claims that he informed the defendants that time was of the essence because bill fishing season started in the middle of May, and told defendants they did not want to repower the vessel unless the work could be completed by May 15, 1997. On or about March 5, 1997, the vessel was delivered to Tolchester's premises for the installation of the new engines. On March 27, 1997, Bramble/Tolchester sent to Monkton in Myrtle Beach an invoice for the sale and installation of the engines in question, a genset, and two air conditioning units.

During the repower, Monkton alleges that he made numerous telephone calls to the defendants to check on the status of the repower. He also claims that the defendants also made numerous telephone calls to Monkton regarding the repower. According to the plaintiffs, as part of the financing arrangements, Johnson & Towers instructed the plaintiffs to make payment directly to Bramble. Bramble mailed all bills and invoices to Monkton at his office in Myrtle Beach, South Carolina. The plaintiffs either mailed checks drawn on South Carolina banks for payment of these bills and invoices to Bramble or

wired the funds from South Carolina banks.

The installation of the engines was thereafter completed, although the details of the timing and the facts surrounding the installation are in dispute. All of the installation work occurred at Bramble/Tolchester's principal (and only) place of business, Chestertown, Maryland. The repower, however, was not completed by the date allegedly agreed upon—May 15, 1997, and according to the plaintiffs, the vessel was not returned in the same condition it was in when the defendants received it, in that the vessel had numerous problems and was filthy dirty. Despite its condition, plaintiffs took delivery of the vessel on about July 25, 1997 to avoid any further delay.

In December of 1997, after navigating the vessel in the waters of the State of South Carolina, Monkton noticed problems in the work done by the defendants. Specifically, Monkton discovered cracks in the vessels' infrastructure and immediately notified Charles I. Shirley, Bramble/Tolchester's Senior Sales Associate, of these problems. The plaintiffs then hired T. Fred Wright, Jr. a qualified marine surveyor, to survey the vessel and assess her damage. On or about January 14, 1998, and again on February 24, 1998, Wright surveyed the vessel at the Hague Marina in Myrtle Beach and discovered numerous problems.

During his resurvey on February 24, 1998, Wright states that another surveyor, Dave Lennox, attended the survey and surveyed the vessel on behalf of Johnson & Towers, Bramble, and Tolchester. Wright also attests that on both October 16, 1998, and March 19, 1999, he resurveyed the vessel, at which time another surveyor, Bill Major, attended and surveyed the vessel. Plaintiffs claim that Bramble/Tolchester sent at least one of

---

**2.** Debis Financial Services is a subsidiary of Detroit Diesel, which is the manufacturer of

the engines proposed for the M/V SECOND LADY by Johnson & Towers.

these additional surveyors to South Carolina to assess the alleged damage.[3]

To date, a determination has not been made whether the M/V SECOND LADY can even be repaired. The engines must be removed, and a qualified naval architect must inspect the vessel to determine whether the damage has rendered the vessel a constructive total loss. The vessel is currently dry-docked at The Hague Marina in Myrtle Beach, South Carolina. The plaintiffs have retained the marina to remove the vessel's engines.

At the time of the installation, Bramble and Tolchester were both Maryland corporations. Neither was registered to do business in South Carolina. All of these defendants' employees were residents of either Maryland or Pennsylvania. Neither Bramble, Tolchester, nor any of their owners, had ever owned or rented property within South Carolina. The only property owned by Bramble and Tolchester was located in Maryland.

As a single corporation, Bramble/Tolchester is a Maryland corporation which is not licensed to do business in South Carolina, and conducts its business within Maryland. The only property owned by Bramble/Tolchester is located in Maryland.

## II. PERSONAL JURISDICTION

■ Once personal jurisdiction is contested, the plaintiff has the burden of showing that jurisdiction is proper. *Umbro U.S.A. v. Goner*, 825 F.Supp. 738, 739 (D.S.C.1993). However, at the pre-trial stage only a *prima facie* showing is required. *Brown v. Inv. Mgt. and Research*, 323 S.C. 395, 475 S.E.2d 754 (1996). *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir.1993). The allegations of the complaint are sufficient to make a determination and are accepted as true. *Springs Indus., Inc. v. Gasson*, 923 F.Supp. 823, 825 (D.S.C.1996) (citations omitted). Yet, a court may consider any affidavits submitted by the parties. *Brown*, 475 S.E.2d at 755.

■ In order to establish jurisdiction over a nonresident defendant, the court must look first to the state's long-arm statute to determine a basis for the exercise of jurisdiction, and second to federal law to ensure that such an exercise of jurisdiction comports with the parameters of the Due Process Clause of the Fourteenth Amendment. *See generally, Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir.1994) (detailing the evolution of Constitutional jurisdictional standards).

Section 36–2–803 of the South Carolina Code confers specific jurisdiction over nonresident defendants in seven enumerated instances.[4] The South Carolina Supreme

---

**3.** Findeisen attests in his affidavit that Johnson & Towers retained Bill Major to survey the subject vessel. He also states that Major is not and never has been an employee of Johnson & Towers. Furthermore, according to Findeisen, Johnson & Towers did not retain Lennox for the survey on February 24, 1998.

**4.** The relevant portions of the long-arm statute provide:
   (1) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's
   (a) transacting any business in this State;
   (b) contracting to supply services or things in the State;
   (c) commission of a tortious act in whole or in part in this State;

(d) causing tortious injury or death in this State by an act of omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; or
   . . .
   (g) entry into a contract to be performed in whole or in part by either party in this State; or,
   (h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.
(2) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in

Court has interpreted this statute to reach to the limits of due process. *See Southern Plastics Co. v. Southern Commerce Bank,* 310 S.C. 256, 423 S.E.2d 128, 130 (1992); *Atlantic Soft Drink Co. v. South Carolina Nat'l Bank,* 287 S.C. 228, 336 S.E.2d 876, 878 (1985). Therefore, this court will collapse the analysis into a single inquiry of the due process clause. *Federal Ins. Co. v. Lake Shore, Inc.,* 886 F.2d 654, 657 n. 2 (4th Cir.1989).

In its analysis of the parameters of personal jurisdiction under the due process clause, the United States Supreme Court has articulated a two-branch test. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The first branch, described as the power or minimum contacts branch, focuses on the connection of the nonresident defendant with the forum state and the relationship between that connection and the litigation. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The second branch, described as the fairness branch, focuses on the evaluation of other facts to test whether an assertion of jurisdiction comports with "fair play and substantial justice." *Id.* at 476, 105 S.Ct. 2174 (*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

## A. Minimum Contacts

Plaintiffs maintain that Defendant Bramble/Tolchester's activities in South Carolina with respect to the repower transaction are sufficient to justify the exercise of personal jurisdiction. Specifically, plaintiffs state their grounds for personal jurisdiction: (1) Bramble/Tolchester transacted business in South Carolina by traveling here to persuade the plaintiffs to do business with them at a cost to the plaintiffs of approximately $124,268.48; (2) Bramble/Tolchester supplied its services to

the plaintiffs in South Carolina by traveling here to assess the suitability of the M/V SECOND LADY for the proposed engines; (3) Bramble/Tolchester was negligent in its inspection of the M/V SECOND LADY in South Carolina, and made negligent and fraudulent misrepresentations to Monkton while in South Carolina by assuring him that the vessel was suitable for the proposed engines and that it would verify suitability with Hatteras (the manufacturer of the vessel); (4) Bramble/Tolchester entered into the oral contract in South Carolina to repower and to perform other repairs to the vessel owned by South Carolina residents; (5) Bramble/Tolchchester repowered the vessel with new engines, thereby distributing the new engines to South Carolina knowing that they would be and were used in South Carolina; (6) Bramble/Tolchester caused the vessel to be damaged in South Carolina; and (7) Bramble/Tolchester sent surveyors to South Carolina to inspect the vessel to determine the extent of her damage. Defendants deny that any of these alleged contacts are sufficient to support the exercise of jurisdiction over them.

Generally, there are three expressions of the contact necessary for the exercise of jurisdiction over a nonresident defendant: (1) whether the defendant has engaged in activity by which he "purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)); (2) whether " 'defendant's conduct and connections with the forum state are such that he should reasonably anticipate being haled into court there" ' *Id.* at 474, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559); and, (3) whether "the defen-

___

this section may be asserted against him, and such action, if brought in this State, shall not be subject to the provisions of the § 15–7–100(3) [changing place of trial].

S.C.Code Ann. § 36–2–803 (Law.Co-op.1976).

dant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and [whether] the litigation results from alleged injuries that arise out of or relate to those activities" *Burger King,* 471 U.S. at 472–73, 105 S.Ct. 2174. In conducting this inquiry, the court must focus on the contacts generated by these defendants and not on the contacts or activities of other defendants. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

Personal jurisdiction over a nonresident defendant may be either specific or general. A court exercises specific jurisdiction when a cause of action arises out of or is related to defendant's activities within the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If, on the other hand, the suit is unrelated to the defendant's contacts with the forum state, the court exercises general jurisdiction. *Id.* Accordingly, the level of minimum contacts necessary to the exercise of general jurisdiction is significantly higher than that required for the exercise of specific jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d at 620, 623–24. To establish general jurisdiction, a defendant must have "continuous and systematic general business contacts" with the forum state, which are "so substantial and of such a nature to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *See International Shoe,* 326 U.S. at 318, 66 S.Ct. 154. Because plaintiffs have failed to assert that general jurisdiction exists over the defendant, and as there has been no evidence of any activities other than those activities from which this cause of action arose, only the propriety of exercising specific jurisdiction is at issue.

Basically, plaintiffs point to four specific contacts allegedly made by the defendant with the South Carolina. First, plaintiffs cite to the trip made by an unnamed Bramble/Tolchester representative to Myrtle Beach, South Carolina for the purpose of arranging the repower of the plaintiffs' vessel. It appears that, while no party has yet been able to identify the Bramble/Tolchester representative by name, both the plaintiffs and Findeison, maintain that this person was a representative from Bramble/Tolchester. Defendant has not denied such. Secondly, plaintiffs allege that Bramble/Tolchester faxed a lengthy proposal for the repower and sale of air conditioning units to the plaintiff in South Carolina. Thirdly, defendant allegedly made numerous telephone calls to South Carolina during the pendency of the transaction. Lastly, plaintiffs maintain that Bramble/Tolchester sent a surveyor to South Carolina to survey the damage to the vessel.

■ It is well established that a single act can support jurisdiction if that act has a "substantial connection" with the forum and gives rise to, or figures prominently in, the cause of action under consideration. *Burger King,* 471 U.S. at 475, n. 18, 105 S.Ct. 2174 (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)); *Chung v. NANA Devel. Corp.,* 783 F.2d 1124, 1127 (4th Cir.1986); *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193, 195 (4th Cir.1976); *Long v. Baldt,* 464 F.Supp. 269, 275 (D.S.C.1979); *Berkeley PG Corp. v. Southbank Investment Group, Inc.,* 291 S.C. 315, 353 S.E.2d 305, 308 (1987). In order for the connection to be deemed "substantial," it must be more than "random or fortuitous." *See ESAB Group,* 126 F.3d at 625; *see also World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (automobile accident suffered while passing through forum state). The "unilateral activity of those who claim some relationship with the nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228; *see World–Wide Volkswagen,* 444

U.S. at 298, 100 S.Ct. 559. Rather, the defendant's conduct and connection with the forum State must be such "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 580.

Upon the arrival of the defendant representatives in South Carolina, Monkton picked them up from the airport for the sole purpose of surveying the vessel to determine its suitability for the proposed repower. They then went to the vessel and inspected it.[5] The Bramble/Tolchester representative had no other business or purpose for being in South Carolina, because, following their meeting and lunch where the work was further discussed, Monkton drove him to the airport for his return flight.

■ Following this meeting between the parties in South Carolina, Bramble/Tolchester sent the plaintiffs in South Carolina a proposal for the repower, and sale and installation of air conditioning units in the subject vessel. Additionally, according to Monkton, the Bramble/Tolchester representative made numerous calls to Monkton in South Carolina, all regarding the negotiation, formation of the contract to sell and install the engines, and the repower of the vessel.[6] All of these contacts, in conjunction with the trip to inspect the vessel, were made in an effort to persuade the plaintiffs to utilize the services of both Bramble/Tolchester and Johnson & Towers in the repower of the vessel. After the formation of the contract, plaintiffs received all bills from Bramble/Tolchester and were asked to submit all payments to Bramble/Tolchester in Maryland. Additionally, after the repowering was complete and there was an allegation of some defect in the job, it appears that Bramble/Tolchester sent a surveyor to South Carolina to survey the alleged damage to the vessel.

This trip and subsequent negotiations with the plaintiffs in South Carolina, when deemed in their entirety, cannot be deemed random or isolated contacts as the defendants argue. Bramble/Tolchester intentionally sent a representative to South Carolina, without request of the plaintiffs, to accompany its business partner Johnson & Towers in assessing the suitability of the subject vessel for the repower service and materials it provides. Pursuant to this inspection, Bramble/Tolchester then necessarily made the determination that the vessel would be a proper candidate for this service, and continued negotiations. with the plaintiffs in South Carolina. It is this determination and performance of the repowering service that is the subject of this suit. Plaintiffs did not request that a Bramble/Tolchester representative come to South Carolina to assess the vessel's suitability for the proposed repower, nor did they choose to specifically deal with Bramble/Tolchester in the negotiations. Bramble/Tolchester, instead, purposely directed its activities with respect to this transaction to South Carolina. "Where the defendant 'deliberately' has engaged in significant activities within a State, ... he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of

**5.** Findeisen claims that while at the vessel, he never entered the vessel to physically inspect it, made no proposal for the repower, nor entered into negotiations with the plaintiffs. (Findeisen Aff. ¶ 10–13).

**6.** Defendant Bramble/Tolchester denies the existence of a contract between itself and the plaintiffs, and asserts that the contract for the repower only existed between co-Defendant Johnson & Towers and the plaintiffs. This court recognizes that "an individual's contract with an out-of-state party alone can[not] automatically establish 'sufficient minimum contacts in the other party's home forum," *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174, however, the inverse also rings true—the absence of a contract does not necessarily preclude a finding of sufficient minimum contacts.

litigation in that forum as well." *Burger King*, 471 U.S. at 476–77, 105 S.Ct. 2174.

## B. Fairness

■ The existence of minimum contacts with a forum raises the presumption of proper jurisdiction under due process. *See World–Wide Volkswagen*, 444 U.S. at 291–92, 100 S.Ct. 580. In order to ensure that jurisdiction over a nonresident defendant does not diminish the protections of the due process clause, the Court has set out the following factors to weigh the fairness of exercising jurisdiction on the basis of minimum contacts: (1) the burden on the nonresident defendant; (2) the adjudicative interest of South Carolina; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the systematic interest of the national judicial system in obtaining the most efficient resolution of the controversy; and, (5) the systemic interest of the states in furthering substantive social policies. *Id.* at 292, 100 S.Ct. 580; *see Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

■ Consideration of the above factors militates in favor of the fairness and reasonableness of exercising personal jurisdiction over the defendants. First, the burden on the defendants is not so severe as to preclude such an exercise. Bramble/Tolchester did not find it burdensome to travel to South Carolina to derive an economic benefit from persuading the plaintiffs to do business with them. While many of Bramble/Tolchester's witnesses regarding the installation of the engines and maintenance of the vessel in Maryland reside in Maryland and Pennsylvania, and will have to travel to South Carolina for trial, that burden is weakened by the relative ease of travel between Maryland and South Carolina (via airplane, train or automobile). Moreover, many of the plaintiffs' potential witnesses live in South Carolina, including the plaintiffs, the representatives of the marina that will remove the engines, and other witnesses who will testify about the plaintiffs' damages.

Second, South Carolina has an adjudicative interest in this dispute because it affects South Carolina residents and their personal property. Additionally, the defendants are subject to personal jurisdiction under several provisions of the long-arm statute. "The South Carolina Legislature in enacting these minimum contact statutes expressed the interest of South Carolina in this litigation and the intention of the state that such causes of action be litigated in South Carolina." *Duplan Corp. v. Deering Milliken, Inc.*, 334 F.Supp. 703, 716 (D.S.C.1971). Defendant Bramble/Tolchester maintains that South Carolina's interest is diminished in this case because no business was transacted in this State and that any contract formed was not to be performed in this State. *See Aviation Assocs. & Consultants, Inc. v. Jet Time, Inc.*, 303 S.C. 502, 402 S.E.2d 177, 181 (1990). To the contrary, there is sufficient allegation that Bramble/Tolchester transacted business when it sent a representative to South Carolina to assess the suitability of the vessel for the repowering service. Moreover, plaintiffs have alleged numerous causes of action other than breach of contract.

Third, plaintiffs will certainly obtain more convenient and effective relief in South Carolina because they both reside here and the subject vessel is presently located in South Carolina.

Fourth, the interstate judicial system will gain the most efficient resolution of the controversy by litigating the dispute in South Carolina because the vessel is located in South Carolina, and therefore, all surveys, inspections, removal of the engines, and discovery relating to the vessel's damage have been and will be conducted in South Carolina.

Finally, exercising jurisdiction over Bramble/Tolchester in South Carolina will further the fundamental substantive social policies of the several states. Every state has an interest in protecting its citizens from wrongs committed in their state and

which result in harm suffered in their state to their residents. In this case, the non-resident defendants entered into the State to persuade the plaintiffs to allow them to do work on personal property which is located in South Carolina and used in South Carolina waters.

### III. VENUE

■ This court's jurisdiction is based upon admiralty jurisdiction. *See* 28 U.S.C. § 1333. In admiralty and maritime cases *in personam*, venue and personal jurisdiction merge. *See* 15 Charles A. Wright, et al., Federal Practice and Procedure § 3817 (2d. ed.1986). Thus, admiralty venue is proper in any district where process can be made upon the defendants, and the court has personal jurisdiction over the defendants in accordance with the applicable state long-arm statute and principles of due process. *In re McDonnell–Douglas Corp.*, 647 F.2d 515, 516 (5th Cir.1981).

In the present case, each of the defendants has been validly served with process, and therefore, venue is proper. Defendants do not contest this, and admit that their motion to dismiss for lack of venue has been rendered moot due to the court's decision to exercise personal jurisdiction.

### IV. CONCLUSION

It is, therefore,

**ORDERED,** for the foregoing reasons that Defendants Bramble Engine Power, Inc. and Tolchester Marina, Inc.'s motion to dismiss for lack of personal jurisdiction is **DENIED,** and their motion, in the alternative, to dismiss for improper venue is **MOOT,**

**AND IT IS SO ORDERED.**